[No. 59188-1.   En Banc.   October 22, 1992.]

NATIONAL FEDERATION OF RETIRED PERSONS, *Appellant*, v. INSURANCE COMMISSIONER, *Respondent*.

102

*Ralph R. Smith,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Robert V. Jensen, Assistant,* for respondent.

SMITH, J. — This is an appeal from a Thurston County Superior Court decision affirming a ruling of the Washington State Insurance Commissioner that certain mailings by the National Federation of Retired Persons constitute insurance solicitations which are prohibited without a license. The appeal was certified to this court by the Court of Appeals, Division Two, pursuant to RCW 2.06.030. We accepted certification on May 6, 1992. We affirm the decision of the Superior Court.

## FACTS

On April 2, 1987, Appellant National Federation of Retired Persons (NFRP) contacted the office of the Washington State Insurance Commissioner asking for a ruling that its proposed conduct of business in this state would not be subject to the jurisdiction of the Insurance Commissioner.[1] On April 20, 1987, Deputy Commissioner Patricia D. Peterson advised NFRP that it would be violating Washington laws if,

---

[1] Clerk's Papers, at 4 (Petition for Judicial Review of Insurance Commissioner's Ruling, filed November 1, 1989, in Thurston County Superior Court cause 89-2-02521-1).

without a proper license, it distributed the insurance materials it had submitted to the Commissioner.[2] Appellant then filed suit in Thurston County Superior Court seeking an answer to the same question (Thurston County cause 88-2-01933-6), only to have the case dismissed on summary judgment by the Honorable Paula Casey for failure to exhaust administrative remedies.[3]

A formal administrative hearing before the Insurance Commissioner was held February 16, 1989, after which the hearing officer (Deputy Insurance Commissioner Edward H. Southon) concluded (1) that NFRP's mailings were subject to the jurisdiction of the Insurance Commissioner, and (2) that NFRP's activities, particularly the mailing of insurance related materials and the sale of the resulting lead cards, constituted "solicitation" of insurance, a type of "insurance transaction" for which a license is required.[4]

After a hearing, the trial court (the Honorable Wm. Thomas McPhee) affirmed the hearing officer's decision by final judgment dated March 20, 1991, despite NFRP's contentions that the Insurance Commissioner lacked jurisdiction over its activities and that imposing a licensing requirement infringed on its constitutional right to free speech.[5] Judge McPhee's "Final Judgment Affirming Insurance Commissioner Order Requiring Licensee [*sic*] to Solicit Insurance" states in its entirety:

1. This is an administrative appeal brought pursuant to the Washington Administrative Procedure Act ("APA"). The Petitioner, National Federation of Retired Persons, appeared by its attorney, Ralph R. Smith. The Respondent, the Insurance Commissioner, State of Washington, appeared through Robert V. Jensen, Assistant Attorney General.

---

[2]Clerk's Papers, at 4.

[3]Clerk's Papers, at 4.

[4]Clerk's Papers, at 20 (Insurance Commissioner's ruling (Oct. 6, 1989)); *see also* former RCW 34.04.120; RCW 48.04.010; WAC 10-08-210.

[5]Clerk's Papers, at 99-101 (Final Judgment Affirming Insurance Commissioner Order Requiring Licensee [*sic*] to Solicit Insurance, Thurston Cy. Superior Court cause 89-2-02521-1 (Mar. 20, 1991), at 1-3).

2. The single issue in this case is whether the Insurance Commissioner has jurisdiction over the activities of the National Federation of Retired Persons before it contacts residents of this state with a "lead letter."

3. The Insurance Commissioner concluded that such contact constituted the transaction of insurance, in the form of solicitation, under RCW 48.01.060. The Insurance Commissioner further concluded, that in order to engage in such insurance transactions, one must be licensed under the Insurance Code.

4. This matter is reviewable under RCW 34.04.130. These review provisions of the old APA are applicable because this administrative proceeding commenced prior to July 1, 1989. RCW 34.05.902.

5. The court has reviewed the entire record submitted to the court by the Insurance Commissioner. Moreover, it has reviewed the briefs submitted by the parties and heard their oral argument. Based thereon, the court concludes that the Insurance Commissioner properly concluded that the proposed activities of the National Federation of Retired Persons in contacting Washington residents with "lead letters" constituted solicitation. *Paulson v. Western Life Ins. Co.*, 636 P.2d 935, 945 (Or. 1981). Thus, it constituted the transaction of insurance under the Insurance Code. RCW 48.01.060.

6. This court also concluded that the Insurance Commissioner has broad authority over the regulation of insurance in the State of Washington. RCW 48.02.060(1); *Omega National Ins. Co. v. Marquardt*, 115 Wn.2d 416, 427, [799] P.2d [235] (1990); *Federated Am. Ins. Co. v. Marquardt*, 108 Wn.2d 651, 654, 741 P.2d 18 (1987); *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 405, 418 P.2d 443 (1966). Accordingly, the interpretation of the Insurance Code by the Insurance Commissioner, that one may not solicit insurance without a license from the Commissioner[,] is both reasonable and necessary to ensure effective implementation of the policies of that code. That construction is supported by WAC 284-12-110, which limits all insurance coverage solicited in this state to agents or solicitors, who by statute must be licensed.

7. The National Federation of Retired Persons also contends that the Commissioner's requirement that the Federation be licensed, before proceeding with its solicitations, is unconstitutional. This court rejects that contention. The requirement of licensing is consistent with the test of *Central Hudson Ins. Corp. v. Public Service Comm'n.*, 447 U.S. 557, 65 L.Ed. 2d. 341, 100 S. Ct. 2343 (1980). I conclude that the second, third and fourth prongs of that test are applicable; namely, that the government interest here is substantial, that licensing requirement directly advances that government interest; and the licensing requirement is not more restrictive than necessary to serve that interest.

NOW THEREFORE, it is hereby ordered, judged, [*sic*] and decreed that the order of the Insurance Commissioner requiring a license prior to solicitation is hereby affirmed.
DONE IN OPEN COURT this 20th day of March, 1991.
/s/ Judge Wm. Thomas McPhee

Appellant appealed to the Court of Appeals, Division Two, which certified the case to this court pursuant to RCW 2.06-.030.

Appellant National Federation of Retired Persons is a nonprofit corporation licensed in Texas in 1979.[6] NFRP describes itself as a "philanthropic association for the benefit of retirees and matured persons."[7] It is not tax exempt under the Internal Revenue Code, nor has it applied for such status.[8] Among its activities, NFRP periodically distributes printed information to members and nonmembers relating to its health education and consumer aid programs.[9] The four pamphlets submitted to the Insurance Commissioner for review noted that they were reprinted by NFRP from a brochure of the United States Department of Health and Human Services.[10] Mailing this reprinted information "appears to constitute the Health Education Program of NFRP."[11]

As part of its "consumer aid" program, NFRP regularly sends members printed information concerning Medicare Supplement insurance.[12] Similar information is sent to non-

---

[6]Clerk's Papers, at 11 (Insurance Commissioner's ruling (Oct. 6, 1989)).

[7]Clerk's Papers, at 11.

[8]Clerk's Papers, at 11.

[9]Clerk's Papers, at 11.

[10]Clerk's Papers, at 11. For example, as part of its health education program, NFRP distributes the "Guide to Health Insurance for People with Medicare" published by the United States Department of Health, Education, and Welfare. Effective May 4, 1980, that agency was redesignated as the Department of Health and Human Services, Pub. L. No. 96-88, 93 Stat. 695 (codified at 20 U.S.C. § 3508(a)).

[11]Clerk's Papers, at 11 (Insurance Commissioner's ruling).

[12]Clerk's Papers, at 11.

members using mailing lists purchased from commercial providers.[13] Copies of those documents are not part of the record before this court. However, in referring to the documents in his ruling, Deputy Insurance Commissioner Edward H. Southon indicated that the mailed materials advise recipients that NFRP has reviewed several Medicare Supplement insurance programs and include postage-paid business reply cards for recipients interested in obtaining additional insurance information.[14] According to Deputy Insurance Commissioner Southon, NFRP's printed materials "[g]ive opinions on the plans such as 'these programs offer outstanding benefits and have reasonable rates.' They include statements such as 'If you act now there will be no health questions and will cover pre-existing conditions [*sic*]. . .".[15]

After receiving completed business reply cards (lead cards) from persons showing an interest in Medicare Supplement insurance, NFRP offers the cards for sale to insurance companies or to individual insurance agents using lists it purchases from state insurance departments.[16] Most of the lead cards are sold at a flat rate ranging from $12 to $20 per card, and NFRP's compensation is not contigent upon the purchasing agent making a successful sale to the person completing the "lead card".[17] In testimony before the Insurance Commissioner, NFRP Executive Director Elmer B. Gibson stated that receipts from the sale of lead cards "might well possibly be" the biggest source of income to the NFRP.[18]

Besides finding that there were financial benefits to NFRP from insurance related mailings, the hearing officer

---

[13]Clerk's Papers, at 11.

[14]Clerk's Papers, at 11-12.

[15]Clerk's Papers, at 11-12.

[16]Clerk's Papers, at 12.

[17]Clerk's Papers, at 12.

[18]Clerk's Papers, at 13.

(Deputy Insurance Commissioner Edward H. Southon) also found that one or more of NFRP's officers personally benefited financially from its mailing operations.[19] The hearing officer reached this conclusion because of the "overwhelming identity between the directors and incorporators of the NFRP and Mailing Surveys, Inc., . . . of San Antonio, Texas . . . the company which performs the mailing services for the NFRP."[20]

Appellant NFRP does not limit the sale of completed lead cards to companies whose policies have been reviewed by NFRP, nor does it limit sales to individual agents representing companies whose policies have been reviewed by NFRP.[21] Accordingly, if a person completes an NFRP lead card, there is no guaranty that that person will be contacted by an insurer whose Medicare Supplement product has been reviewed by NFRP.[22]

### QUESTIONS

This case presents two principal questions: (1) whether the Washington State Insurance Commissioner has authority under RCW Title 48 to restrict distribution of printed materials by the National Federation of Retired Persons by requiring it to secure a license before engaging in such distribution in this state when the materials being distributed advise recipients concerning available Medicare Supplement insurance and invite and encourage recipients to seek such insurance; and (2) if the Commissioner has that authority, whether imposition of a licensing requirement on the National Feder-

---

[19]Clerk's Papers, at 15.

[20]Clerk's Papers, at 15. Some of the officers of NFRP are related to officers or agents of Mailing Surveys, Inc. According to the Insurance Commissioner's ruling of October 6, 1989, Deborah C. Gibson is the president/treasurer of Mailing Surveys, Inc. She is also the wife of Elmer B. Gibson, the Executive Director of NFRP. Ms. Gibson is also the daughter of Edwin E. Cochran, who was an original incorporator and director of NFRP and is currently its president.

[21]Clerk's Papers, at 12 (Insurance Commissioner's ruling).

[22]Clerk's Papers, at 12-13.

ation of Retired Persons infringes upon its right to free speech under either the first amendment to the United States Constitution or article 1, section 5, of the Washington State Constitution.

DISCUSSION

Washington's Insurance Code (Code), RCW Title 48, recites that "[t]he business of insurance is one affected by the public interest . . .."[23] RCW Title 48 applies to all insurance or insurance transactions in Washington,[24] and requires all persons involved in insurance transactions to "be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."[25] To effectuate its purpose, the Code vests the Insurance Commissioner with broad authority.[26] The Commissioner has the authority expressly conferred by or reasonably implied from provisions of the Code.[27] The Commissioner is charged with enforcement of the Code and is authorized to "[m]ake reasonable rules and regulations for effectuating any provision of this code".[28]

Appellant does not dispute the breadth of the Commissioner's authority over insurance transactions. Rather, appellant merely contends that its distribution of free insurance information pamphlets does not constitute an "insurance transaction" within the meaning of RCW 48.01.060; and that, accordingly, its activities are outside the scope of the Insurance Commissioner's authority.[29] The Insurance Commissioner disagrees.[30]

---

[23]RCW 48.01.030.

[24]RCW 48.01.020.

[25]RCW 48.01.030.

[26]RCW 48.02.060; *Federated Am. Ins. Co. v. Marquardt*, 108 Wn.2d 651, 654, 741 P.2d 18 (1987).

[27]RCW 48.02.060(1).

[28]RCW 48.02.060(3)(a).

[29]Brief of Appellant, at 5.

[30]Brief of Respondent, at 11.

RCW 48.01.060 provides that:

"Insurance transaction" includes any:
(1) Solicitation.
(2) Negotiations preliminary to execution.
(3) Execution of an insurance contract.
(4) Transaction of matters subsequent to execution of the contract and arising out of it.
(5) Insuring.

We must determine whether appellant's distribution activities constitute "solicitation" within the meaning of RCW 48.01.060. If they do, then they constitute "insurance transactions" and are subject to the Commissioner's regulatory authority.[31] And if they do not, NFRP's activities might still be subject to the Commissioner's jurisdiction if authority over such activities is "reasonably implied" by the express provisions of the Code.[32]

■ Our Insurance Code, RCW Title 48, does not specifically define the term "solicitation", and a review of Washington case law has yielded no authority defining the term in the context of RCW 48.01.060. However, in defining the word "solicits" in the context of its insurance code, at least one State (Oregon) has held that the term "includes the kind of activities normally engaged in by a person proposing that another person subscribe to an insurance policy . . .."[33] According to *Paulson v. Western Life Ins. Co.*, 292 Or. 38, 636 P.2d 935 (1981), "solicits" includes inviting, requesting, urg-

---

[31]RCW 48.02.060.

[32]RCW 48.02.060(1).

[33]*Paulson v. Western Life Ins. Co.*, 292 Or. 38, 62, 636 P.2d 935, 949 (1981). Or. Rev. Stat. § 744.165 (1991) provides in part that "any person who solicits or procures an application for insurance shall . . . be regarded as the agent of the insurer issuing the policy and not the agent of the insured." Because the question in *Paulson* (whether an employer "solicits" by engaging in such activities may be regulated under Oregon's insurance code) is similar to the question in this case (whether NFRP's activities constitute "solicitation" sufficient to subject it to regulation under Washington's Insurance Code), the Oregon case provides some guidance in determining a definition of "solicitation".

ing, or advising a person to subscribe to insurance, endeavoring to obtain such a subscription, or approaching a person for the purpose of receiving an application for insurance coverage.[34]

Under the *Paulson* definition, NFRP's activities would constitute solicitation because, at a minimum, they "invite" recipients to subscribe to Medicare Supplement insurance. NFRP regularly sends printed information concerning Medicare Supplement insurance to members and nonmembers.[35] This information includes statements that NFRP has reviewed several Medicare Supplement insurance programs, and that, in NFRP's opinion, certain plans offer outstanding benefits and have reasonable rates.[36] To the extent that those mailings include statements to the effect that "if you [recipients] act now there will be no health questions and . . . pre-existing [health] conditions will be covered",[37] they are urging recipients to subscribe. Additionally, by enclosing postage-paid business reply cards (lead cards) in its mailings, NFRP encourages recipients to seek further information about insurance, and facilitates such inquiries by paying the cost of postage.[38]

■ Appellant NFRP contends that its distributions do not constitute solicitations because its mailings are conducted independently of any insurance company, and because NFRP receives no remuneration from recipients of those mailings.[39] However, the first contention is not supported by the record before us. NFRP purchases mailing lists from state insur-

---

[34]*See Paulson*, at 62.

[35]Clerk's Papers, at 11 (Insurance Commissioner's ruling).

[36]Clerk's Papers, at 11-12.

[37]Clerk's Papers, at 11-12.

[38]Clerk's Papers, at 11-12.

[39]Brief of Appellant, at 6. Appellant's second argument is implied from its repeated statements that its materials are distributed "at no cost to recipients. "

ance departments prior to conducting its mailings, and sells completed lead cards to insurance companies and agents after its mailings.[40] Appellant cites no authority for the proposition that financial remuneration from recipients of insurance related mailings is a necessary prerequisite to a finding that the mailings constitute solicitations. Such an argument is questionable at any rate because NFRP admittedly receives payment from insurers who purchase completed lead cards.[41]

Even if we were not to adopt Oregon's judicial definition of the word "solicits", NFRP's activities would still constitute solicitation under the rule of statutory construction that statutory language is given its plain meaning absent legislative provision to the contrary.[42] According to Black's Law Dictionary, "solicit" means: "[t]o appeal for something . . . [t]o tempt . . . to lure . . . [t]o awake or excite to action . . . or to invite. . . ."[43] Materials which advise recipients concerning available insurance policies, inform them of the attractive provisions of such policies, and encourage them to act quickly in order to secure optimal benefits seem clearly to meet this definition. We conclude that NFRP's insurance-related mailings constitute solicitations within the meaning of RCW 48.01.060. As such, they constitute insurance transactions and are thus subject to the jurisdiction of the Insurance Commissioner under RCW 48.01.020.

Having determined that appellant's activities are solicitations subject to the authority of the Insurance Commissioner, we next address the question whether requiring NFRP to secure a license before engaging in such solicitations violates its freedom of speech under either the first amendment to

---

[40]Clerk's Papers, at 11 (Insurance Commissioner's ruling).

[41]Clerk's Papers, at 12 (Insurance Commissioner's ruling).

[42]*State v. Sommerville*, 111 Wn.2d 524, 531, 760 P.2d 932 (1988); *Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 97, 758 P.2d 480 (1988); *Department of Rev. v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973).

[43]Black's Law Dictionary 1564 (4th ed. 1968).

the United States Constitution or article 1, section 5 of the Washington Constitution.

The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech . . .."[44] Article 1, section 5 of our state constitution states that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

Appellant argues that its mailings constitute "speech" entitled to protection under those constitutional provisions.[45] Respondent Insurance Commissioner argues that NFRP's actions constitute "conduct", rather than speech, and, as such, are not entitled to protection.[46] Respondent contends, alternatively, that if NFRP's activities do constitute "speech", it should be considered "commercial speech" which traditionally is afforded less constitutional protection than noncommercial speech.[47] Appellant NFRP does not question the constitutionality of the statute authorizing the Commissioner to impose a licensing requirement on insurance agents, brokers, solicitors or adjustors.[48] Rather, appellant merely disputes the constitutionality of the statute as applied to its activities.

Because the Insurance Commissioner only has jurisdiction over "insurance and insurance transactions",[49] its juris-

---

[44]U.S. Const. amend. 1.

[45]Brief of Appellant, at 7-8, 17.

[46]Brief of Respondent, at 21.

[47]*See generally Thomas v. Collins*, 323 U.S. 516, 545, 89 L. Ed. 430, 65 S. Ct. 315 (1944). Justice Jackson, in his concurring opinion, explains why the state has greater power to regulate commercial speech, as compared to noncommercial speech. "This wider range of power over *pursuit of a calling* than over *speech-making* is due to the different effects which the two have on interests which the state is empowered to protect. The modern state owes and attempts to perform a duty to protect the public from those who seek for one purpose or another to obtain its money. . . ." (Italics ours.)

[48]RCW 48.17.060.

[49]RCW 48.01.020.

diction over appellant's activities extends only to those activities which constitute insurance transactions. The Commissioner asserts an interest in this case not because NFRP is merely conducting mailings, but because the wording of those mailings, coupled with resale of completed lead cards, constitutes, in the Commissioner's opinion, solicitation of insurance. At least to the extent the questioned conduct involves NFRP's use of language, its right to free speech is involved.

█ Free speech is protected under both the United States Constitution and our state constitution.[50] However, the right is not absolute.[51] For example, the constitution allows greater regulation of commercial speech than of noncommercial speech because of a State's interest in protecting the public from those seeking to obtain its money.[52] This focuses on two issues. Do NFRP's activities constitute "commercial speech", as opposed to noncommercial speech? If so, is a licensing requirement a constitutionally permissible restriction on that speech?

█ Commercial speech has been defined as expression related solely to the economic interests of the speaker and its audience.[53] It has also been defined as speech proposing a commercial transaction.[54] Appellant NFRP's activities satisfy the second definition, but not the first. To the extent that NFRP's mailings inform recipients of available insurance and advise them to act quickly to secure optimal bene-

---

[50]U.S. Const. amend. 1; Const. art. 1, § 5.

[51]*See, e.g., Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 564, 68 L. Ed. 2d 341, 100 S. Ct. 2343 (1980) (deceptive commercial speech not constitutionally protected); *Pasco v. Rhine,* 51 Wn. App. 354, 753 P.2d 993 (1988).

[52]*Thomas v. Collins,* 323 U.S. 516, 544-45, 89 L. Ed. 430, 65 S. Ct. 315 (1944) (Jackson, J., concurring).

[53]*Central Hudson,* 447 U.S. at 561.

[54]*Central Hudson,* 447 U.S. at 562.

fits, those mailings propose commercial transactions. But, to the extent that information on medical insurance helps advance the mental health of recipients by advising them that health care services are available if needed, that information might be considered more general and might not constitute expression related solely to the economic interests of the speaker and its audience. If it does not, then it is not commercial speech.

Appellant's brief does not include an assignment of error specifically disputing the characterization of its activities as commercial speech. Instead, appellant makes only a general contention that its actions constitute "speech" warranting constitutional protection.[55] Because Appellant NFRP's brief did not specifically assign error to the trial court's finding that its activities constituted commercial speech,[56] as required by RAP 10.3(g), appellant would seem to be precluded from arguing the issue before this court.[57] In determining whether Appellant has complied with the requirements of RAP 10.4(c) and RAP 10.3(g), we must refer to the rules and the cases interpreting them. RAP 10.4(c) states that:

> If a party presents an issue which requires study of a statute, rule, regulation, jury instruction, finding of fact, exhibit, or the like, the party should type the material portions of the text out verbatim or include them by facsimile copy in the text or in an appendix to the brief.

---

[55]Brief of Appellant, at 8.

[56]Final Judgment Affirming Insurance Commissioner Order, Thurston Cy. cause 89-2-02521-1 (Mar. 20, 1991), at 3. Judge McPhee held that the Insurance Commissioner's licensing requirement, as applied to the National Federation of Retired Persons, was constitutional under the test established in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 68 L. Ed. 2d 341, 100 S. Ct. 2343 (1980). Since the United States Supreme Court adopted that test for the purpose of adjudging the constitutionality of restrictions on *commercial speech*, the trial court by implication concluded that NFRP's activities constituted commercial speech.

[57]*See also Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 53, 586 P.2d 870 (1978) (general rule is that unchallenged findings of a trial court will be treated as verities on appeal). *Cf. Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 311, 752 P.2d 372 (1988).

RAP 10.3(g) provides that:

> A separate assignment of error for each finding of fact a party contends was improperly made or refused must be included with reference to the finding or proposed finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

A review of appellant's brief indicates that it is at least minimally in compliance with RAP 10.4(c) since it broadly assigns error to the action of the Insurance Commissioner which was upheld by the trial court. The Insurance Commissioner's entire opinion is attached to appellant's brief. That document provides information relevant to this appeal. The appeal in this case, however, purports to be from the order of the Thurston County Superior Court. That order is neither recited nor incorporated in appellant's brief. It is immaterial since "[o]ur review is on the record of the administrative tribunal, not of the superior court."[58] With respect to RAP 10.3(g), appellant has clearly not complied with the assignment of error rule. That suggests that this court should ordinarily dismiss the case for noncompliance with the rule.

■ RAP 1.2(a), however, permits this court to hear this case despite noncompliance with RAP 10.3(g) if we conclude that "justice is to be served by such review."[59] RAP 1.2(a) states that the Rules of Appellate Procedure "will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. . . ." This court has previously stated that RAP 1.2(a) "makes clear that technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged

---

[58]*Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 311, 752 P.2d 372 (1988) (citing *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983)).

[59]*State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981) (quoting *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979)); *see State v. Schaupp*, 111 Wn.2d 34, 39, 757 P.2d 970 (1988).

finding is set forth in the appellate brief, [this court] will consider the merits of the challenge."[60]

Despite appellant's failure to comply with the assignment of error rule, we nevertheless consider that justice will be served by review. We determine that NFRP's activities constitute commercial speech and now address the issue whether a licensing requirement is a constitutionally permissible restriction on commercial speech.

■ The United States Supreme Court has established a 4-part test for determining constitutional regulation of commercial speech under the First Amendment.[61] To be afforded constitutional protection, commercial speech must involve lawful activity and must not be misleading.[62] For commercial speech to be permissibly regulated, the government interest must be substantial, the regulation must directly advance that interest, and the regulation must be no more extensive than is necessary to serve that interest.[63] This does not mean that the regulation must be the least restrictive means of furthering the government's interest.[64] Rather, there need only be a "fit" between the ends sought to be achieved by the government and the means chosen to accomplish those ends.[65]

■ Appellant NFRP concedes that the State has a substantial interest in regulating insurance "agents" to protect the elderly from fraud, but contends that no substantial interest exists for regulating its distribution of materials

---

[60]*Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979), *cited with approval in State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981).

[61]*Central Hudson*, 447 U.S. at 566.

[62]*Central Hudson*, at 566.

[63]*Central Hudson*, at 566.

[64]*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 476-77, 106 L. Ed. 2d 388, 109 S. Ct. 3028 (1989); *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 341, 92 L. Ed. 2d 266, 106 S. Ct. 2968 (1986).

[65]*See Posadas*, at 341.

since, according to NFRP, it is not involved in the insurance business. This argument lacks merit. Appellant's distribution activities constitute solicitations within the meaning of the Washington Insurance Code. As such, they constitute "insurance transactions". Thus, the Insurance Commissioner has a substantial interest in preventing fraud in those transactions.

Appellant next argues that imposing a licensing requirement on its activities does not directly advance the State's interest in preventing fraud. There is no merit to this argument. Requiring licenses for insurance solicitors or those engaging in insurance solicitations enables the Insurance Commissioner to monitor the content and quality of insurance information distributed in Washington, as well as the identity of those distributing the information. Licensing is also a means of providing accountability for those in the insurance business in this state. While perhaps not the sole method for addressing the problem of fraud in the insurance business, a licensing requirement does directly advance the State's interest.

Finally, Appellant NFRP contends that a licensing requirement is more restrictive than is necessary to serve the State's purpose and, thus, it is unconstitutional. Appellant impliedly argues that restrictions on commercial speech must constitute the least restrictive means of serving the government's interest. This is not correct. There needs to be only a "fit" between the ends sought by the government and the means chosen to accomplish those ends.[66] Here, the end sought is protection of citizens from fraudulent insurance transactions. A licensing requirement "fits" this purpose. Requiring licensing for those engaging in activities constituting insurance transactions furthers this end by providing the Insurance Commissioner with authority to regulate those activities. Licensing provides the Commissioner with a useful enforcement tool, since sanctions may be imposed against those engaging in insurance transactions without a license.

---

[66]*Posadas*, at 341.

Thus, the Insurance Commissioner's licensing requirement, as applied to NFRP's activities, satisfies the *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 68 L. Ed. 2d 341, 100 S. Ct. 2343 (1980) test and does not offend the first amendment to the United States Constitution.

▮ Washington case law provides no clear rule for constitutional restrictions on commercial speech. In an obscenity case, *O'Day v. King Cy.,*[67] this court stated that the state constitution provides greater protection for speech than the federal constitution.[68] In a later case, this court held that, at least in obscenity cases, the Washington Constitution does *not* provide greater protection than the federal constitution.[69] We therefore follow the interpretative guidelines under the federal constitution. Under that test, the licensing requirement in this case does not violate article 1, section 5 of the Washington Constitution.

▮ This court reviews issues of fact under the "clearly erroneous" standard of review in view of the entire record. It reviews errors of law under the "error of law" standard. The reviewing court may "essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law."[70] Applying these standards to the record in this case, we conclude that the decision of the Insurance Commissioner was correct and that the trial court was correct in upholding that decision.

CONCLUSION

We affirm the decision of the Thurston County Superior Court upholding the ruling of the Washington State Insurance Commissioner. The Washington Insurance Commissioner has the authority to regulate and license the National

---

[67]109 Wn.2d 796, 802, 749 P.2d 142 (1988).

[68]*O'Day,* at 802.

[69]*State v. Reece,* 110 Wn.2d 766, 776, 757 P.2d 947 (1988), *cert. denied,* 493 U.S. 812 (1989).

[70]*Franklin Cy. Sheriff's Office,* at 325.

Federation of Retired Persons in its insurance solicitation activities (distribution of certain written materials relating to insurance) in the state of Washington. The licensing requirement for the National Federation of Retired Persons does not infringe upon its right to free speech under the Constitutions of the United States and of the State of Washington.

DORE, C.J., and UTTER, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.