[No. 31333-9-I. Division One. August 16, 1993.]

CASCADE NURSING SERVICES, LTD., *Respondent,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Appellant.*

*Christine O. Gregoire, Attorney General,* and *Mary C. Lobdell, Assistant,* for appellant.

*Philip A. Talmadge, David R. Frankel,* and *Talmadge & Cutler, P.S.,* for respondent.

SCHOLFIELD, J. — Appellant Employment Security Department (Department) appeals from a superior court decision reversing a determination of the Commissioner of Employment Security that nurses associated with Cascade Nursing

Services were not independent contractors under RCW 50.04-.140. Cascade Nursing Services cross-appeals. We affirm.

Cascade Nursing Services is a Washington corporation organized in 1987. Cascade operates a business which refers qualified registered nurses to medical facilities and institutions. During the period at issue in this case, Cascade advertised in the yellow pages under "Nursing Services" and solicited nurses through the want ads.

Cascade refers only registered nurses who do not require any supervision in the performance of their duties. Cascade interviews prospective nurses and requests documentation showing the nurse has obtained professional liability insurance and is licensed to engage in business in the state of Washington. Nurses not meeting these criteria are rejected.

Each nurse accepted by Cascade must sign an agreement. The agreement specifies that no employment relationship exists between Cascade and the nurse and that "Contractor acknowledges that Contractor's relationship with Cascade is that of an independent contractor." The agreement states that each nurse is independently self-employed and that the nurse is responsible for payment of all state and federal taxes required as a result of the nurse's performance of services to the medical facility. The nurse's relationship with Cascade is not exclusive; the nurse is free to perform services through other agencies and for other medical institutions.

When a nurse signs a contract, Cascade requests him or her to complete a scheduling preference sheet, and Cascade attempts to match the skills of the nurse with the needs of a particular medical facility. The actual selection of nurses is made by the hospital from a list of names submitted to the hospital by Cascade. A nurse may refuse any offered referral, and a medical facility may refuse to utilize a particular nurse. Each nurse is free to set the work days, hours and area of practice, and is required to supply a uniform and equipment. Cascade retains the authority to terminate the referral of a nurse following 10 days' notice.

Cascade does not supervise or train nurses sent to a facility, conducts no performance reviews of the nurses, and does not reimburse any expenses. The agreement provides that it is the hospital's function to evaluate the performance of the nurses. The nurses are personally liable for work-related negligence.

The agreement additionally states that Cascade "has no desire to control, influence or direct the quality of Contractor's professional services or the manner or nature in which they are rendered, . . .". The agreement specifies that the "nature and scope of the services to be provided by the qualified nurses . . . shall be solely determined by Hospital." The nurses placed at hospitals are assigned by the hospitals' staffing offices in accordance with the nurses' area of clinical expertise.

Cascade negotiates a nurse's fee with each medical facility based on skill level and hourly shift requested by the facility. A nurse can negotiate a different fee with a facility if the referral involves an extension, an emergency situation, or a longer shift. Cascade also negotiates a fee with each medical facility for its services. The medical facility reimburses Cascade at a specified hourly rate for each hour that a nurse provides services to the facility.

Once the nurse performs the services, Cascade requires that each nurse present the medical facility with its billing invoice. The nurse must obtain an authorized signature on the invoice and return it to Cascade. Cascade advances 80 percent of the fee due the nurse within 1 week following completion of the nursing service and pays the remaining 20 percent to the nurse when the hospital remits payment. The nurse is required to reimburse funds advanced by Cascade where a medical facility fails to pay 100 percent of the funds advanced by Cascade.

The Department audited Cascade for the year 1987 to determine if it owed unemployment tax contributions on the nurses associated with it. By order and notice of assessment dated October 13, 1988, the Department assessed taxes, pen-

alties, and interest totaling $28,997.69 for the second through fourth quarters of 1987. Cascade sought administrative review of this determination, but the order was affirmed, first by the Office of Administrative Hearings and then by the Commissioner of the Department. Cascade then appealed to King County Superior Court. The Superior Court reversed the Commissioner's decision, concluding that Cascade was not obligated to pay employment security insurance premiums on nurses for whom it acted as a scheduling and billing agent in 1987.

The Department appeals, claiming the Superior Court erred in concluding that the nurses' services were exempt from taxation under the independent contractor exemption contained in RCW 50.04.140. Cascade cross-appeals, asserting the trial court erred in failing to find that the Department was collaterally estopped from litigating the threshold question of whether the nurses were in "employment" of Cascade under RCW 50.04.100. Cascade also argues that, collateral estoppel notwithstanding, the Superior Court erred in affirming the Commissioner's determination that the nurses were in the employment of Cascade.

## GOVERNING LAW

Cascade's administrative appeal in this case was filed November 11, 1988. RCW 34.05.902 states that "[r]ule-making actions or other agency proceedings begun before July 1, 1989, shall be completed under the applicable provisions of chapter . . . 34.04 RCW existing immediately before that date . . .". Because Cascade's administrative appeal pursuant to RCW 50.32.030 was filed prior to July 1, 1989, this case is governed by RCW 34.04. *See Read v. Employment Sec. Dep't*, 62 Wn. App. 227, 232 n.3, 813 P.2d 1262 (1991).

Former RCW 34.04.130(6) provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

In reviewing an administrative decision, the appellate court stands in the same position as the superior court. *Morrison v. Department of Retirement Sys.*, 67 Wn. App. 419, 425, 835 P.2d 1044 (1992). The court's review is limited to the record before the administrative agency. *See Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). The court reviews findings of fact under the "clearly erroneous" standard of review in light of the entire record. *National Fed'n of Retired Persons v. Insurance Comm'r*, 120 Wn.2d 101, 119, 838 P.2d 680 (1992). Under this standard, a finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 83, 795 P.2d 1184 (1990), *review denied*, 116 Wn.2d 1005 (1991).

In reviewing an agency's conclusions of law, the court applies an "error of law" standard. *See Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991). The court gives substantial weight to the agency's interpretation of the law, although it may substitute its judgment for that of the agency. *Haley*, at 728.

Agency decisions regarding mixed questions of law and fact are reviewed under the "error of law" standard. *Daily Herald Co. v. Department of Empl. Sec.*, 91 Wn.2d 559, 561-62, 588 P.2d 1157 (1979). With mixed questions of law and fact, the court determines the correct law independent of the agency's decision and then applies it to the facts as found by the agency. *Henson v. Employment Sec. Dep't*, 113 Wn.2d 374, 377, 779 P.2d 715 (1989).

NURSES' SERVICES NOT FOR BENEFIT OF CASCADE

■ Under the Employment Security Act, an entity qualifies as an "employer" if it has persons in employment. RCW 50.04.080. Under RCW 50.04.100, "employment" is defined as follows, in part:

> "Employment", subject only to the other provisions of this title, means *personal service*, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

(Italics ours.) The test for "personal service", as used in RCW 50.04.100, is whether the services performed by the nurses under contract here were clearly for Cascade or for its benefit. *See Daily Herald*, at 564. The question of what constitutes "personal services" is a mixed question of law and fact. *Daily Herald*, at 561. What activities the nurses perform is a question of fact; whether these activities constitute "personal services" is a question of law. *See Daily Herald*, at 561.

Cascade argues that a decision of the Thurston County Superior Court precludes the Department from litigating the issue of whether the nurses' services were for Cascade's benefit. See Department of Labor and Industries v. Cascade Nursing Services, Ltd., Thurston Cy. cause 90-2-02253-3 (filed Oct. 10, 1991). This case involved an appeal by Cascade from a decision of the Board of Industrial Insurance Appeals to Thurston County Superior Court. Among the issues was whether the nurses qualified as workers within the meaning of the Industrial Insurance Act, RCW 51.08-.180. In part, the court concluded that the nurses performed work for the hospitals, not Cascade.

Cascade asserts that the Department chose not to appeal the Thurston County Superior Court decision and that the decision is therefore preclusive on the question of whether the nurses performed work for its benefit. We disagree.

■ The doctrine of collateral estoppel prevents the relitigation of an issue or determination of fact after the party

sought to be estopped has had a full and fair opportunity to present his or her case. *Lutheran Day Care v. Snohomish Cy.*, 119 Wn.2d 91, 113-14, 829 P.2d 746 (1992), *cert. denied*, ___ U.S. ___, 122 L. Ed. 2d 353, 113 S. Ct. 1044 (1993). One of the conditions which must be satisfied before the doctrine will be applied is that the issues in the two actions are identical. *Lutheran Day Care*, at 115.

At issue in the earlier action was whether the nurses associated with Cascade were Cascade's workers under RCW 51.08.180. The issue here is whether the nurses are in the employment of Cascade under RCW 50.04.100, and the test to be applied is whether services performed were clearly for Cascade or for its benefit. *See Daily Herald*, 91 Wn.2d at 564. Whether the nurses' services benefited Cascade was not determined in the earlier action. Therefore, the issue in the prior action and in this case is not identical, and the doctrine of collateral estoppel is not applicable.

The Superior Court in this case ruled that the nurses' services benefited Cascade and that Cascade was therefore an employer under the Employment Security Act. This was the same result reached by the Office of Administrative Hearings. Cascade asserts these determinations are erroneous because the nurses provided personal services to medical facilities and their patients without any exertion of control by Cascade. Cascade therefore claims the nurses' activities are outside the scope of RCW 50.04.100.

The two leading cases in this area are *Skrivanich v. Davis*, 29 Wn.2d 150, 186 P.2d 364 (1947) and *Daily Herald Co. v. Department of Employment Sec., supra*. In both of these cases, there existed a clear, direct connection between the personal services provided and the benefit received by the entity subject to the unemployment tax.

In *Skrivanich*, the court addressed whether owners of a fishing vessel were liable for unemployment compensation contributions by reason of the "shares" paid by them to their crew members. *Skrivanich*, at 151, 155. The owners claimed the services performed by the crew members were not performed for the owners and that no remuneration or wages

were ever paid to the crew members out of the owners' funds. *Skrivanich*, at 159. The owners' claim was essentially that the crew's services were performed as part of a joint venture, with the remuneration simply being a proportionate share of an existing joint property in the fish and the proceeds derived therefrom. *Skrivanich*, at 159. In addressing this claim, the court stated:

> [W]e note parenthetically (1) that the sections of the 1945 statute defining employer and employment . . . do not expressly require that the services be performed *for* the employer, but refer simply, though broadly, to a relationship wherein any individual or type of organization has in his or its employ any person engaged in performing personal services; (2) that the statute does not require that the wages or remuneration be paid out of funds belonging to the employer; (3) that the statute includes not only services performed for *wages*, but also services performed "under any contract calling for the performance of personal services"; and (4) that the statute specifically provides that the services may be of any nature whatever, unlimited by the relationship of master and servant or any other legal relationship.

*Skrivanich*, at 160.

The court concluded that the services performed by the fishermen under contract were clearly for the owners' benefit. The owners owned the fishing vessels, gear, and nets and arranged the fishing expeditions. The owners employed fishermen to make the expeditions successful. Fishermen were selected to perform specified tasks under the direction of the captain, and such tasks were performed for the owners' benefit in conducting their business. *Skrivanich*, at 160.

In *Daily Herald Co. v. Department of Empl. Sec., supra*, the court addressed whether the Everett Daily Herald was liable for unemployment compensation tax on persons described as "bundle droppers". *Daily Herald*, at 560. These persons picked up bundled newspapers at the Herald's building and delivered them to "drop points" for ultimate delivery by neighborhood carriers. *Daily Herald*, at 560. Agreements governing the relationship stated in part that the contractor (bundle dropper) had exclusive responsibility for employment of any third parties. In reliance on this provision, the

Herald disputed a determination that unemployment compensation taxes were owing on the bundle droppers. The Herald claimed the services performed by the bundle droppers were not "personal services" under RCW 50.04.100 because the agreements allowed performance not only by the bundle droppers but also by their "substitutes". *Daily Herald Co. v. Department of Empl. Sec.*, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979).

■ The court disagreed, holding that the appropriate test for "personal services" under *Skrivanich* was "not whether the services are performed personally by a party to the contract, but rather whether 'the services . . . performed under the contracts were clearly *for* the appellants or for their benefit.' " *Daily Herald*, at 564 (quoting *Skrivanich*, at 160). The court ruled that the services performed by the bundle droppers facilitated the circulation of newspapers and clearly benefited the Herald. Therefore, the services were "personal services" within the meaning of RCW 50.04.100. *Daily Herald*, at 564.

In this case, the Department claims Cascade received benefits from the nurses' services, including (1) revenue from each hour of service provided a hospital by a nurse; (2) the promotion of Cascade's business by the nurses; and (3) the goodwill generated by the nurses' services. However, we do not believe this is the type of "personal service" contemplated by RCW 50.04.100. Although *Skrivanich* indicates that the statute may apply where the services are not performed *for* an employer, *Daily Herald* makes clear that if the services are not performed clearly for the employer, the services must still be *clearly* for the employer's benefit. The services provided by the nurses here are not clearly for Cascade or its benefit.

"In ordinary usage the term 'services' has a rather broad and general meaning. It includes generally *any act performed for the benefit of another* under some arrangement or agreement whereby such act was to have been performed. The general definition of 'service' as given in Webster's New International Dictionary is '*performance of labor for the benefit of*

*another*'; 'Act or instance of helping, or benefiting.' The term 'personal service' indicates that the 'act' done for the benefit of another is done *personally* by a particular individual."

*Skrivanich*, at 161 (quoting *Creameries of Am. v. Industrial Comm'n*, 98 Utah 571, 580, 102 P.2d 300 (1940)).

■ In this case, the act or acts constituting personal services are the nursing services provided by the nurses to the hospitals. Cascade does not benefit *from* these services, but only receives a fee for referring qualified nurses to particular facilities. In other words, Cascade is simply a scheduling and billing agent for the nurses. This case is thus distinguishable from both *Skrivanich* and *Daily Herald*, where the personal services provided directly benefited the entity subject to the tax. In addition to receiving no direct benefit from the services, Cascade has *no general power to direct or influence* the quality of the services performed.[1] For these reasons, we conclude that the nurses are not in the employment of Cascade pursuant to RCW 50.04.100. We affirm the Superior Court on this ground.

ATTORNEY FEES

■ Cascade argues it is entitled to attorney fees on appeal because this appeal is frivolous or because the court should allow attorney fees where a party is defending an action by government. The test for determining whether an appeal is frivolous is set forth in *Massachusetts Mut. Life Ins. Co. v. Department of Labor & Indus.*, 51 Wn. App. 159, 752 P.2d 381 (1988):

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply

---

[1]Cascade signs an agreement with each nurse stating that no employment relationship exists, that each nurse is independently self-employed, and that each nurse must pay all state and federal taxes. Each nurse must obtain professional liability coverage and be licensed to engage in business in this state. No supervisory or training function is undertaken by Cascade, and Cascade agrees with each nurse that it has no desire to control, influence, or direct the quality of the nurses' professional services to the hospitals. Instead, it is the hospitals which determine the scope and quality of the services.

because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Massachusetts Mut. Life Ins.*, at 166 (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980)). Under these guidelines, the appeal in this case is clearly not frivolous. Although we conclude the nurses are not in the employment of Cascade under RCW 50.04.100, the question presents issues on which reasonable minds may differ. We further decline to award Cascade fees on the theory that the Department unreasonably forced Cascade to incur expenses in defending this action.

Our disposition of this case makes it unnecessary to address whether the nurses are exempt from the Employment Security Act under the independent contractor exception stated in RCW 50.04.140. We further need not decide Cascade's motion on the merits to affirm on jurisdictional grounds.

Judgment affirmed.

FORREST and BAKER, JJ., concur.

Review denied at 123 Wn.2d 1013 (1994).