[No. 61703-6-I.   Division One.   April 13, 2009.]

THE LANGUAGE CONNECTION, LLC, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

*David W. Meyer* (of *Bullivant Houser Bailey, PC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Mary M. Tennyson, Assistant*, for respondent.

¶1 LAU, J. — The Language Connection (TLC) is a services referral agency for language interpreters. The Employment Security Department concluded that the interpreters were engaged in employment for TLC and the company was liable for unemployment insurance contributions. The plain language of RCW 50.04.245 requires that before a services referral agency like TLC is liable, it must be responsible for compensating the workers it refers. Because TLC is not responsible for compensating the interpreters for their services, we reverse the Department's decision.

## FACTS

¶2 The Language Connection, LLC, refers language interpreters to government agencies, hospitals, and others. These entities—TLC's clients—contact TLC's office staff when they need an interpreter, providing the date, time, language, and expected duration of the encounter. TLC's schedulers then search a database of several hundred interpreters and attempt to find an interpreter who is available, fluent in the requested language, and willing to

accept the assignment. TLC schedules some interpreters frequently and others only once every two or three years, depending on the level of demand for different languages. Many of the interpreters obtain jobs through other referral agencies in addition to TLC. Interpreters have the right to decline projects.

¶3 If an interpreter agrees to accept an assignment, he or she goes to the client's location, performs the service, and then submits an "encounter form" to TLC. TLC uses the encounter form to generate a bill, which it presents to the client. After the client pays, TLC forwards the payment to the interpreter minus its commission, which is usually around 30 percent. TLC has a sophisticated billing system that expedites the payment process, and some interpreters use TLC only as a billing service.

¶4 Before performing any services for TLC's clients, the interpreters and TLC enter into a "contractor agreement." The contract states, "The parties of this Agreement do not intend to establish any employer/employee relationship between them. The translator and/or interpreter is an independent contractor." Commissioner's Record (CR) at 221. In exchange for TLC's referral and billing service, the interpreters agree to pay TLC a commission, to "pay any taxes necessary for the conduct of business as an independent contractor," and to follow health privacy laws. The agreement also provides that the interpreters are solely responsible for the accuracy of their work and are liable for any damages their mistakes cause. The contract's payment provision states,

> You appoint The Language Connection as your agent for billing and collecting your fees for any work falling under the terms of this Agreement. You authorize The Language Connection to deposit into its account any payments received on your behalf, and to deduct its commission by payment from the account at the end of each month. The Language Connection agrees to forward your fees to you promptly upon payment of any item received on your behalf by the drawee bank concerned.

CR at 221.

¶5 The Department conducted a random audit of TLC for the years 2004 and 2005. The Department determined that the interpreters were within TLC's "employment" as defined by RCW 50.04.245 and that TLC was therefore subject to liability for unemployment insurance contributions. It further concluded that the independent contractor exemption in RCW 50.04.140 was inapplicable because TLC had the right to control the interpreters' work, as evidenced by its requirements that the interpreters follow a code of ethics, wear photo identification badges, take a "pledge of confidentiality," comply with HIPAA (Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320d to 1320d-8), and refrain from sexual harassment. Accordingly, it assessed TLC for unemployment insurance contributions, penalties, and interest totaling $29,037.56.

¶6 TLC appealed the assessment to the Office of Administrative Hearings. The administrative law judge concluded that TLC was liable based on RCW 50.04.245 and upheld the assessment. TLC filed a petition for review to the Department's commissioner. The commissioner agreed that the interpreters were engaged in employment for TLC under RCW 50.04.245. The commissioner noted that TLC could still avoid liability by proving that the interpreters were independent contractors under RCW 50.04.140(1), but he concluded that TLC failed to make this showing. TLC then sought judicial review in King County Superior Court. The superior court affirmed the commissioner's decision, and this appeal followed.

## ANALYSIS

■■ ¶7 TLC argues that the Department erroneously interpreted RCW 50.04.245 to find it liable for unemployment insurance contributions. An appellate court reviews an agency's interpretation of the law de novo. *Affordable Cabs, Inc. v. Employment Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). While the court accords substantial weight to the agency's interpretation if the agency has

specialized expertise in the area, the court is not bound by the agency's interpretation. *Affordable Cabs,* 124 Wn. App. at 367; *Bauer v. Employment Sec. Dep't,* 126 Wn. App. 468, 481, 108 P.3d 1240 (2005).

¶8 We briefly review the statutory scheme for liability under the Employment Security Act, Title 50 RCW. Employers are responsible for contributions to the unemployment compensation fund. RCW 50.24.010. To qualify as an "employer," an entity must have persons in "employment." RCW 50.04.080. Under RCW 50.04.100, "employment" is defined as follows:

> "Employment", subject only to the other provisions of this title, means personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

Once it is established that an entity has persons in employment, then the entity qualifies as an employer and it will be liable for contributions unless it can prove that an exemption applies. RCW 50.32.150; *Henry Broderick, Inc. v. Riley,* 22 Wn.2d 760, 774, 157 P.2d 954 (1945). There are exemptions for certain domestic service workers, agricultural laborers, barbers, massage practitioners, newspaper delivery persons, and others. RCW 50.04.145-.240. Additionally, there is a general exemption for independent contractors. RCW 50.04.140. Thus, under Washington's unemployment insurance system, the threshold test for assessing liability is whether a purported employer has persons engaged in "employment." *Penick v. Employment Sec. Dep't,* 82 Wn. App. 30, 38-39, 917 P.2d 136 (1996). Unless this test is satisfied, there is no need to consider whether the independent contractor or other exemptions apply. *Broderick,* 22 Wn.2d at 774; *Penick,* 82 Wn. App. at 39.

¶9 While the definition of "employment" in RCW 50.04.100 is broad, it is not all encompassing. "To determine

if a work situation satisfies the definition of 'employment,' RCW 50.04.100, the Commissioner must determine (1) if the worker performs personal services for the alleged employer and (2) if the employer pays wages for those services." *Penick*, 82 Wn. App. at 39. To satisfy the first prong of this test, the personal services must clearly be performed for the alleged employer or for its benefit. *Penick*, 82 Wn. App. at 39; *Cascade Nursing Servs., Ltd. v. Employment Sec. Dep't*, 71 Wn. App. 23, 856 P.2d 421 (1993).

¶10 In *Cascade*, this court addressed whether nurses were engaged in employment for a nursing referral agency under RCW 50.04.100. Cascade operated a business referring nurses to medical facilities. It interviewed prospective nurses and required that they obtain liability insurance. The nurses were free to decline referrals and obtain work through other agencies. Cascade negotiated the nurses' fees with the medical facilities and performed billing services for the nurses. Cascade advanced 80 percent of the nurse's fee within one week of the job completion and forwarded the remaining 20 percent after it received the facility's payment. If the facility did not pay, the nurses were required to reimburse the funds Cascade had advanced.

¶11 We concluded that Cascade did not "employ" the nurses within the meaning of RCW 50.04.100 and that it was therefore not liable for unemployment contributions. While the nurses were performing personal services for wages, the personal services were not "clearly for Cascade or for its benefit." *Cascade*, 71 Wn. App. at 30. We held that their services were for the benefit of the medical facilities. Cascade received only incidental benefits.

> [T]he act or acts constituting personal services are the nursing services provided by the nurses to the hospitals. Cascade does not benefit *from* these services, but only receives a fee for referring qualified nurses to particular facilities. In other words, Cascade is simply a scheduling and billing agent for the nurses.

*Cascade*, 71 Wn. App. at 34. Because the nurses were not engaged in employment for the alleged employer, the

threshold test for liability was not satisfied and we did not reach the issue of whether the nurses were independent contractors under RCW 50.04.140. *Cascade*, 71 Wn. App. at 35.

¶12 In 1995, the legislature adopted RCW 50.04-.245. At the time the Department audited TLC, this statute provided:

(1) Subject to the other provisions of this title, personal services performed for, or for the benefit of, a third party pursuant to a contract with a temporary services agency, employee leasing agency, services referral agency, or other entity shall be deemed to be employment for the temporary services agency, employee leasing agency, services referral agency, or other entity when the agency is responsible, under contract or in fact, for the payment of wages in remuneration for the services performed.

(2) For the purposes of this section:

(a) "Temporary services agency" means an individual or entity that is engaged in the business of furnishing individuals to perform services on a part-time or temporary basis for a third party.

(b) "Employee leasing agency" means an individual or entity that for a fee places the employees of a client onto its payroll and leases such employees back to the client.

(c) "Services referral agency" means an individual or entity that is engaged in the business of offering the services of an individual to perform specific tasks for a third party.

Former RCW 50.04.245 (1995).[1] No previous cases have applied or interpreted this statute.

¶13 The commissioner determined that TLC was a services referral agency and that the threshold test of employment was satisfied based on the language in RCW

---

[1] This statute was amended in 2007. RCW 50.04.245(1) now reads, "Subject to the other provisions of this title, personal services performed for, or for the benefit of, a third party pursuant to a contract with a temporary staffing services company or services referral agency constitutes employment for the temporary staffing services company or services referral agency when the agency is responsible, under contract or in fact, for the payment of wages in remuneration for the services performed." The 2007 amendment did not affect services referral agencies and is not relevant to resolution of this case.

50.04.245(1).[2] TLC acknowledges that it is a services referral agency, but argues that it does not "employ" the interpreters. We agree that although TLC is a services referral agency, this fact alone does not establish that the interpreters it refers are engaged in "employment" for the agency. The plain language of the statute also requires that TLC be "responsible, under contract or in fact, for the payment of wages in remuneration for the services performed." RCW 50.04.245(1). If TLC is not responsible for such payments, then no employment relationship is established. The term "wages" means "remuneration," which is defined as "all compensation paid for personal services including commissions and bonuses and the cash value of all compensation paid in any medium other than cash." RCW 50.04.320(1), (4)(a). Thus, the critical question is whether TLC is responsible for paying the interpreters compensation for their personal services.

¶14  The commissioner determined that TLC was responsible for paying the interpreters within the meaning of RCW 50.04.245. It reasoned,

> Ms. Benitez testified that the client is responsible [for] pay[ing] the interpreter, and that petitioner does not pay its interpreter if the client fails to pay. The contract between petitioner and its interpreters does not address that situation. There was no testimony that this situation has ever arisen; Mr. William Wilson, an interpreter who accepts referrals from petitioner and others, testified that it had not. Considering this evidence and the fact that petitioner developed and manages a sophis-

---

[2] The Department argues on appeal that an alternative basis for satisfying this threshold test and upholding the commissioner's decision is the definition of "employment" found in RCW 50.04.100, discussed above. It contends that the interpreters' personal services are for TLC or for its benefit because "[i]f the interpreters did not perform the services, neither TLC nor the interpreters would get paid." Resp't's Br. at 14. We reject this argument. The referral business in *Cascade* also depended on the nurses it referred performing services for its clients, yet that did not mean the nurses were engaged in employment for Cascade under RCW 50.04.100. We concluded that the nurses' services were for the benefit of the medical facilities and that Cascade received only incidental benefits. Likewise, here, the interpreters' services are for the benefit of TLC's clients; the fees TLC receives for its scheduling and billing service constitute only an incidental benefit. Indeed, TLC arguably provides a benefit and service to the interpreters rather than the other way around.

ticated system for obtaining interpreters, scheduling them, charging and billing clients, collecting and disbursing payments, we conclude that it is responsible for payment pursuant to RCW 50.04.245(1) . . . .

CR at 360.

¶15 We conclude that the commissioner erred. The plain language of the statute requires that TLC be responsible for paying compensation to the interpreters for their services before it will be deemed their employer for unemployment insurance purposes. We agree with TLC that this responsibility must derive from a contractual duty or some other legal obligation. The interpretation of an unambiguous contract is a matter of law reviewed de novo. *Quality Food Ctrs. v. Mary Jewell T, LLC*, 134 Wn. App. 814, 817, 142 P.3d 206 (2006). Here, the contract between TLC and its interpreters indicates only that TLC must promptly forward interpreter fees *once it receives them from its client*. If TLC were legally obligated to pay compensation to the interpreters for their services, then it would be required to pay them regardless of whether it received payment from its client. There is simply nothing in the contract to indicate that TLC has such an obligation. The commissioner notes that the contract does not specifically address what would happen if a client failed to pay and emphasizes that the situation has never arisen. But these observations miss the point—if this situation did arise, an interpreter seeking compensation from TLC could point to no contractual provision that would entitle him or her to payment.

¶16 Further, there is nothing in the record showing that TLC is responsible "in fact" for compensating the interpreters based on any other legal theory. The commissioner emphasizes that TLC has a sophisticated scheduling and billing system, but this does not establish that it must pay the interpreters for their services if its clients do not pay it. The Department notes that TLC retains the difference between what it can charge its clients and what its interpreters agree to accept for their work. But the fact that TLC's charges vary based on negotiations with its clients

and the interpreters does not mean it is responsible for compensation.

¶17 Some referral businesses are responsible for compensating the workers they refer, and some are not. *Compare Jerome v. Employment Sec. Dep't,* 69 Wn. App. 810, 812-13, 850 P.2d 1345 (1993) (noting, "[i]f the brokerage firm does not pay Jerome, the demonstrators, nevertheless, expect to be paid"), *with Med. Consultants Nw., Inc. v. State,* 89 Wn. App. 39, 43, 947 P.2d 784 (1997) ("if a client did not pay MCN for an examination performed, MCN would not be obligated to pay the physicians"). In adopting RCW 50.04.245, the legislature allocated liability for unemployment insurance contributions only to the businesses that are required to compensate the workers. Here, TLC is not responsible for compensating the interpreters. Because the threshold test for employment fails, we need not analyze whether the interpreters would qualify as independent contractors under RCW 50.04.140. We conclude that the commissioner erred, and we reverse its decision and the assessment.

*Attorney Fees*

¶18 TLC requests attorney fees under RAP 18.1. RAP 18.1(a) provides, "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule . . . ." RAP 18.1(b) requires the party seeking fees to devote a section of its opening brief to the request. Here, TLC's opening brief requests an award of fees based on RCW 4.84.350, the state equal access to justice act.

¶19 RCW 4.84.350(1) provides, "Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award

unjust. . . ." The agency has the burden of showing that fees should be denied because its action was substantially justified. *Union Elevator & Warehouse Co. v. State*, 144 Wn. App. 593, 608, 183 P.3d 1097 (2008). To meet this burden, the agency must demonstrate that its position has a reasonable basis in law and fact. *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 623, 965 P.2d 626 (1998).

¶20 Here, the Department does not argue that fees should be denied because its actions were substantially justified. Instead, its only argument for why fees should be denied is that under *Markam Group, Inc. v. Employment Security Department*, 148 Wn. App. 555, 200 P.3d 748 (2009), "attorney's fees in cases against the Employment Security Department may only be awarded under RCW 50.32.160, not under RCW 4.84.[350]." Resp't's Statement of Additional Authority at 1. We do not agree that the holding in *Markam* is this broad. In *Markam*, the court concluded that the claimant could not recover fees under RCW 4.84.350 because the "[e]xcept as otherwise specifically provided by statute" language was triggered by RCW 50.32.160. This statute allows a claimant to recover fees from the unemployment compensation administration fund when the commissioner's decision is modified or reversed on an appeal involving the individual's application for initial determination, claim for waiting period credit, or claim for benefits. RCW 50.32.160; *Gibson v. Employment Sec. Dep't*, 52 Wn. App. 211, 220-21, 758 P.2d 547 (1988). But RCW 50.32.160 does not apply here, where an employer is appealing an assessment of contributions. RCW 50.32.050; *Pa. Life Ins. Co. v. Dep't of Employment Sec.*, 97 Wn.2d 412, 417-18, 645 P.2d 693 (1982). Because RCW 50.32.160 is inapplicable and the Department points to no other statute that would trigger RCW 4.84.350(1)'s "exception clause," we agree that TLC as the prevailing party is entitled to attorney fees on appeal.

¶21 We reverse the commissioner's decision and award TLC fees on appeal, subject to compliance with RAP 18.1.

SCHINDLER, C.J., and GROSSE, J., concur.