IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CANNATONICS, DR. CHAMBERS, LLC, and T-TOWN, JOH SERVICES, LLC, | No. 45999-0-II |
| Appellants, | |
| v. | |
| CITY OF TACOMA, a municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — Cannatonics, Dr. Chambers, LLC and T-Town, JOH Services, LLC (collectively Cannatonics) are proprietors of two separate medical marijuana facilities that operate "collective gardens" pursuant to the Washington State Medical Use of Cannabis Act (MUCA), ch. 69.51A RCW. The City of Tacoma (the City) issued a cease and desist order or a relocation notice because the businesses operated within "sensitive areas" and were therefore public nuisances under the Tacoma Municipal Code (TMC). Cannatonics appeals the superior court's order upholding the City's public nuisance determination. Cannatonics argues that (1) the ordinance was unconstitutionally overbroad, (2) the ordinance violated Cannatonics' substantive due process rights, and (3) the ordinance was unconstitutionally vague. We hold that the ordinance was constitutional and that Cannatonics was not deprived of its substantive due process rights. We affirm.

FACTS

Pursuant to the MUCA, qualifying medical marijuana patients may create and participate in "collective gardens." Former RCW 69.51A.085 (2011). Participating in a collective garden involves "sharing responsibility for acquiring and supplying the resources required to produce and process cannabis for medical use." *See* LAWS OF 2011, ch. 181, § 403.

In July 2012, in response to a growing number of marijuana-related businesses operating in Tacoma, the City sought to enact an ordinance that would permit it to regulate any such business that was engaging in illegal activity. The City believed that it was possible that marijuana deliveries occurred in places that claimed to be operating as collective gardens. In the City's view, these businesses "endanger[ed] the comfort, repose, health, and safety of citizens." Clerk's Papers (CP) at 109.

Accordingly, the City amended its municipal code to add provisions declaring that certain marijuana-related businesses would be considered nuisances per se while others would be considered public nuisances only if they operated in specific, sensitive areas. Significantly, the amended code included provisions declaring that any collective garden located within 600 feet of any day care or park, among other places, was a nuisance.[1] Former TMC 8.30.045(C)(5)(a)-(g)

---

[1] Former TMC 8.30.045 (2012) provides in part,
> (C) The following specific acts, omissions, places, and conditions are declared to be a public nuisance including, but not limited to, any one or more of the following:
> . . . .
> 5. Any collective garden located closer than the distance noted below to any of the following, whether in or out of the City:
> . . . .
> (b) Within 600 feet of any daycare, nursery, or preschool;
> (c) Within 600 feet of any park.

(2012). The ordinance also contained a provision that prohibited advertising the sale or delivery of marijuana. Former TMC 8.30.045(10).

Cannatonics operated businesses in the City identified as collective gardens. A city inspection revealed that Cannatonics was located within 600 feet of both Ben Gilbert and Fireman's Parks and that T-Town was located within 600 feet of a day care. The City sent notices of violation to each establishment informing them of their need to cease operations or relocate their collective gardens.[2]

Cannatonics appealed the City's nuisance determination. A hearing examiner, and then the superior court, each affirmed the City's nuisance findings. Cannatonics appeals.

ANALYSIS

I. OVERBREADTH

Cannatonics argues that former TMC 8.30.045 was unconstitutionally overbroad because it contained a provision that declared that medical marijuana-related advertising constitutes a public nuisance. According to Cannatonics, the ordinance was therefore unconstitutional essentially because the prohibited advertising is lawful "speech" under the First Amendment and the ordinance had a chilling effect on that speech. We disagree.

A. LEGAL PRINCIPLES

Constitutional challenges are questions of law subject to de novo review. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006). A party challenging a statute's constitutionality bears the heavy burden of establishing its unconstitutionality. *Amunrud*, 158

_____

[2] The City sent one notice in late 2012 and the other in early 2013.

Wn.2d at 215. "A duly enacted ordinance is presumed constitutional, and the party challenging it must demonstrate that the ordinance is unconstitutional beyond a reasonable doubt." *Kitsap County v. Mattress Outlet/Gould*, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005).

In general, a law is unconstitutionally overbroad if constitutionally protected free speech activities are swept within its prohibitions. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 804, 231 P.3d 166 (2010). The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "'substantially overbroad.'" *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting *Houston v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987)). When faced with an overbreadth challenge, a court must first determine whether an enactment reaches a substantial amount of constitutionally protected conduct. *Huff*, 111 Wn.2d at 925. A government may regulate or ban entirely speech that proposes an illegal transaction. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). And the overbreadth doctrine does not apply to purely commercial speech. *Vill. of Hoffman Estates,* 455 U.S. at 497.

## B. CONSTITUTIONALITY OF FORMER TMC 8.30.045(10)

As a threshold matter, we note that the enactment of the amended municipal code giving rise to this lawsuit occurred before the legalization of recreational marijuana in December 2012. Tacoma Substitute Ordinance No. 28083; LAWS OF 2013, ch. 3, § 1. We also note that this case involves the City's regulation of medical marijuana and not recreational marijuana. Thus, our analysis and holding relate only to medical marijuana.

Cannatonics argues that a series of 2011 amendments to the MUCA made the use and possession (and delivery of medical marijuana between qualified patients and providers) of

4

medical marijuana lawful activity for qualified patients. Thus, Cannatonics argues that former TMC 8.30.045 was unconstitutional because it contained a provision which constituted an overbroad restriction on constitutionally protected free speech.

The provision at issue, former TMC 8.30.045(10), provided that "[a]ny place bearing a sign or placard advertising cannabis for sale or delivery" is a nuisance.[3] Importantly, both Division One of this court and our Supreme Court have recently examined the effect of the 2011 MUCA amendments to determine whether the use of medical marijuana is now legal under current Washington law. Those cases are instructive.

In *Cannabis Action Coalition v. City of Kent*, 180 Wn. App. 455, 322 P.3d 1246 (2014), *aff'd*, 183 Wn.2d 219, 351 P.3d 151 (2015), Division One of this court conducted a comprehensive analysis regarding the 2011 amendments. The court examined several related sections within the amended MUCA framework and discussed the effect of Governor Gregoire's veto of more than 30 of the enacted provisions.[4] *Cannabis Action Coal.*, 180 Wn. App. at 470-72, 474.

As part of its analysis, Division One reviewed RCW 69.51A.040, which provides that "[t]he medical use of cannabis in accordance with the terms and conditions of this chapter does

---

[3] The City did not cite Cannatonics for having any such advertising, but a facial overbreadth challenge to a statute is an exception to the traditional rule that the "person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458 U.S. 747, 767-69, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982). Therefore, Cannatonics may raise this challenge here.

[4] Governor Gregoire vetoed much of the legislation after United States District Attorneys informed her that the 2011 amendments would have authorized conduct illegal under federal law and that State employees administering the registry would not be immune from prosecution. *Cannabis Action Coal.*, 180 Wn. App. at 464.

not constitute a crime" so long as the patient meets six listed requirements. One of those criteria is that a qualifying patient or designated provider keeps proof of registration with the registry established in section 901 of the act. RCW 69.51A.040(3).

But as the *Cannabis Action* court noted, section 901 was one of the many vetoed sections. 180 Wn. App. at 471. As a result, the intended registry does not exist and, therefore, it is impossible for any patient to be registered with the registry, meaning that no individual is able to meet the requirements of RCW 69.51A.040. *Cannabis Action Coal.*, 180 Wn. App. at 471. Division One concluded that the only protection left intact under the statutory framework was to assert at trial an affirmative defense available to nonregistered medical marijuana patients who meet certain requirements. *Cannabis Action Coal.*, 180 Wn. App. at 471-72. As such, the *Cannabis Action* court held that medical marijuana use (including collective gardens) was not legalized by the 2011 amendments to the MUCA.

Then, in a subsequent criminal case, our Supreme Court conducted an analysis nearly identical to Division One's. *State v. Reis*, 183 Wn.2d 197, 200-01, 351 P.3d 127 (2015). The *Reis* court held that "the plain language of the MUCA, supported by the context in which the language appears, the overall statutory scheme, and the legislative intent as captured by the governor's veto message, does not support the conclusion that the medical use of marijuana is not a crime." 183 Wn.2d at 201. Therefore, patients who wish to use, deliver, and possess medical marijuana, and who meet certain criteria, must continue to rely on the existing affirmative defense in the event they face criminal prosecution.

Accordingly, even despite the amendments to the MUCA, it was a crime at the time the ordinance was enacted to possess, manufacture, or distribute marijuana in Washington, medical or

otherwise. *See* former RCW 69.50.401 (2013). It follows that any sign or placard advertising the sale or delivery of medical marijuana to the extent that it constitutes "speech," necessarily proposes an illegal transaction. And, as mentioned, governments may regulate or ban such speech entirely.[5] *Vill. of Hoffman Estates*, 455 U.S. at 496. Thus, we hold that Cannatonics has not demonstrated that medical marijuana is legal and therefore Cannatonics fails to establish that former TMC 8.30.045 was unconstitutionally overbroad on that ground.[6]

## II. SUBSTANTIVE DUE PROCESS

Cannatonics contends that former TMC 8.30.045 was unconstitutional because it constituted arbitrary and capricious government action and it therefore violated Cannatonics' substantive due process rights. We disagree.

### A. STRICT SCRUTINY OR RATIONAL BASIS REVIEW

As a threshold matter, Cannatonics argues that we should apply strict scrutiny review to the City's decision to enact former TMC 8.30.045. This is so, according to Cannatonics, because the ordinance effectively impeded medical marijuana patients from access to the medical care their healthcare providers recommended. We reject Cannatonics argument that strict scrutiny review applies.

---

[5] Cannatonics recognizes that the overbreadth doctrine does not apply to "commercial speech," that is, advertising that proposes a commercial transaction. *See Vill. of Hoffman Estates*, 455 U.S. at 496-97; *Mattress Outlet/Gould*, 153 Wn.2d at 511. Aware of this fact, Cannatonics argues that the doctrine nevertheless applies to the advertising prohibition here because it also reaches delivery of medical marijuana from one member of a collective garden to another.

[6] Cannatonics appears to suggest that former TMC 8.30.045 was also unconstitutionally vague. But we decline to consider this claim because Cannatonics dedicates no argument to the claim in its opening brief contrary to RAP 10.3(a)(6).

"Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures." *Amunrud*, 158 Wn.2d at 218-19. As with a procedural due process claim, a plaintiff must first show that the government deprived him of a constitutionally protected liberty or property interest. *Johnson v. Dep't of Fish & Wildlife*, 175 Wn. App. 765, 774, 305 P.3d 1130, *review denied*, 179 Wn.2d 1006 (2013).

Once a party has identified a protected interest, we must determine what level of review to apply. The level of review we apply to a substantive due process challenge depends on the nature of the right affected. *Amunrud*, 158 Wn.2d at 219. If a right can be characterized as fundamental, we apply strict scrutiny. *Johnson*, 175 Wn. App. at 775. Strict scrutiny requires that infringement of a right be narrowly tailored to serve a compelling government interest. *Amunrud*, 158 Wn.2d at 220.

A law that does not interfere with fundamental rights and protected liberty interests is subject only to rational basis review. *Am. Legion Post #149 v. Dep't of Health*, 164 Wn.2d 570, 604, 192 P.3d 306 (2008). To survive rational basis review, the City's action must be rationally related to a legitimate government interest.[7] *Amunrud*, 158 Wn.2d at 222.

---

[7] We acknowledge that there appears to be some confusion over the proper test to apply to a substantive due process challenge of this nature. While Cannatonics suggests that the ordinance at issue cannot withstand either strict scrutiny or rational basis review, it also cites the three-prong substantive due process test articulated by our Supreme Court in *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330, 787 P.2d 907 (1990), and historically applied to land use decisions. Pursuant to that test, we ask (1) whether the regulation is aimed at achieving a legitimate public purpose, (2) whether it uses means that are reasonably necessary to achieve that purpose, and (3) whether it is unduly oppressive on the land owner. But more recently, in *Amunrud*—a licensing case cited above—our Supreme Court declined to apply the three-prong test (one dissenting justice would have applied the three-prong test), reiterating that the rational basis test as stated above applies in situations involving nonfundamental rights. 158 Wn.2d at 226. Importantly, however,

In support of the proposition that strict scrutiny applies here, Cannatonics cites several United States Supreme Court cases wherein the Court recognized certain fundamental rights, including some implicating medical patient and provider relationships. Cannatonics is correct that due process clause jurisprudence has established that the constitution safeguards certain fundamental rights and protected liberty interests, including many related to medical procedures or treatment. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965) (marital privacy and right to use contraception); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (abortion); *Cruzan* v. *Missouri Dep't of Health*, 497 U.S. 261, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990) (right to refuse medical care).

Cannatonics asserts that former TMC 8.30.045 similarly invaded the penumbra of guaranteed privacy rights by regulating away a medical marijuana patient's ability to obtain and implement the care recommended by their providers. But the United States Supreme Court has described fundamental rights and protected liberty interests as rights which are "'so rooted in the traditions and conscience of our people as to be ranked as fundamental'" and "'implicit in the concept of ordered liberty'" such that "'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part by Malloy v. Hogan*, 378 U.S. 1, 84, S. Ct. 1489, 12 L. Ed. 2d 653 (1964); *Palko*

---

Cannatonics' claim would fail under either test because the City's ordinance did not preclude collective gardens from operating generally, it only did so insofar as the collective gardens operated close to a few, specifically delineated sensitive areas. And asking the collective gardens to relocate was the only way to accomplish the City's stated goals. *See also Amunrud*, 158 Wn.2d at 226 n.5.

*v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937), *overruled by Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)).

And Cannatonics cites nothing to suggest and no authority to support the notion that access to a specific controlled substance, whether or not some medical benefit may derive from its use, constitutes such a protected interest or fundamental right. Moreover, the ordinance at issue here did not purport to completely deny patients the right to use medical marijuana or an outright ban on all collective gardens; it merely restricted where certain medical marijuana entities could operate. Accordingly, we hold that no fundamental right or protected liberty interest is implicated here. Therefore, we apply rational basis review.

## C. RATIONAL BASIS

Cannatonics argues that even if we apply a rational basis review, former TMC 8.30.045 was nevertheless unconstitutional because the ordinance does not advance any legitimate government interest. Specifically, Cannatonics contends that many of the underlying reasons the City cited when it enacted its ordinance are not supported in law or fact. According to Cannatonics, this means that the proffered reasons are not sufficient to demonstrate that the ordinance was enacted in furtherance of any legitimate government interest. We reject this argument.

As mentioned, the City's ordinance will withstand rational basis review if it is rationally related to a legitimate government interest. *Amunrud*, 158 Wn.2d at 222. And when we decide whether a rational relationship exists, we may assume the existence of any necessary state of facts which we can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate government interest. *Amunrud*, 158 Wn.2d at 222.

10

Pursuant to provisions of the MUCA in effect at the time the City issued its nuisance findings to Cannatonics, cities and towns were permitted by statute to adopt and enforce zoning requirements, business licensing requirements, *health and safety requirements*, and business taxes pertaining to the production, processing, or dispensing of cannabis or cannabis products.[8] Former RCW 69.51A.140 (2011). The City also has the power "to declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue, or suffer nuisances to exist." RCW 35.22.280(30).

As part of the ordinance, the City included several statements describing the purpose and intent underlying its decision to amend the municipal code to add provisions regulating collective gardens. It is these "WHEREAS" statements that Cannatonics claims make it evident that there was no legitimate government interest associated with former TMC 8.30.045 and the City's action in forcing Cannatonics to relocate.

---

[8] In a somewhat similar case ultimately addressing different constitutional arguments, our Supreme Court affirmed Division One of this court in *Cannabis Action*, holding that the city of Kent had the authority to enact a zoning ordinance that prohibited collective gardens in every zoning district within the city and deemed any violation a nuisance per se. 183 Wn.2d at 222. The difference between that case and this matter is that the city of Kent's ordinance was styled as a zoning ordinance where former TMC 8.30.045 was styled as a public health and safety legislation. But cities have the authority to adopt requirements related to both zoning and public health.

For instance, Cannatonics contends that the ordinance does not withstand rational basis review in part because the ordinance is based on a mistaken understanding concerning the legality of medical marijuana-related businesses.[9] According to Cannatonics, a series of 2011 amendments to the MUCA made these businesses, including collective gardens, legal enterprises under Washington law where qualifying medical marijuana patients were previously required to avail themselves of an affirmative defense if they faced criminal prosecution.

But this argument is unpersuasive for two reasons. First, as explained above, collective gardens are illegal despite the 2011 MUCA amendments and, therefore, it is Cannatonics who is operating under a misconception in this regard. And second, even if Cannatonics was correct, it nevertheless fails to explain how the regulation of collective gardens in sensitive areas is not a legitimate government interest.

The following "WHEREAS" statements were also included as part of the ordinance:

> WHEREAS, as a criminal activity, these businesses endanger the comfort, repose, health, and safety of citizens, and constitute a nuisance, and
> . . . .
> WHEREAS many persons and entities are operating as "collective gardens" with a "business" or "administrative" office at the same location where a dispensary was located and the City believes that cannabis is being delivered at these locations, and
> . . . .
> WHEREAS collective gardens and other production, processing, dispensing, and delivery of cannabis for medical use present: (1) issues of public safety and odor for surrounding properties, as well as for the property on which the uses and/or facilities exist; and (2) issues of public welfare and the protection of minors when located near schools, daycare facilities, parks, libraries, youth centers, drug treatment facilities, and other lawful uses, and

---

[9] One of the "WHEREAS" statements challenged by Cannatonics provides, "WHEREAS these businesses are illegal under local, state, and federal law, and the City has provided notice to some of these businesses that they must cease illegal activity." CP at 109.

> WHEREAS the City must ensure that any potential secondary impacts arising from the operation of collective gardens can be adequately regulated, and
>
> . . . .
>
> WHEREAS, unless regulations declaring certain activities a nuisance are adopted, the City lacks the necessary tools to address the effect on public health, safety, and welfare of collective gardens and other activities relating to cannabis.

CP at 109-11.

These statements evince the City's intent to address public health and safety issues that may arise if collective gardens are permitted to operate in the City's communities. The statements also demonstrate a concern that collective gardens' potential secondary impacts may implicate health and welfare concerns if such entities exist in close proximity to places that minors may frequent.

Cannatonics cites no authority to suggest that the City's regulation of collective gardens is not a legitimate government interest. And our Supreme Court has stated unequivocally that protection of health and welfare of all citizens *is* a legitimate government interest.[10] *Am. Legion Post #149*, 164 Wn.2d at 604. Thus, we conclude that Cannatonics' substantive due process claim fails because the City's ordinance is rationally related to a legitimate government interest. Consequently, Cannatonics has failed to establish, as it must, that former TMC 8.30.045 was unconstitutional beyond a reasonable doubt.

---

[10] Cannatonics also contends that there are no evidence or facts to support the City's position that collective gardens will produce odors or will threaten public safety such that they should be considered a nuisance under former TMC 8.30.045. But again, whether or not this is true, Cannatonics' assertion that this compels the conclusion that the ordinance is not rationally related to a legitimate government interest is not supported by any authority. And for the purposes of rational basis review, we are entitled to assume that such facts do exist. *Amunrud*, 158 Wn.2d at 222.

No. 45999-0-II

In conclusion, we reject Cannatonics' arguments that medical marijuana is legal and thus we reject its argument that the statute is overbroad. Further, we hold that the statute does not violate Cannatonics' substantive due process rights. Cannatonics has failed to establish that former TMC 8.30.045 is unconstitutional beyond a reasonable doubt on these grounds. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.